UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-61952-CIV-COHN/SELTZER

ANDREW MICHAEL GEARY,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security Administration,

Defendant.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

I.    INTRODUCTION

THIS CAUSE is before the Court on the cross-motions for summary judgment[1] filed,

respectively, by Plaintiff Andrew Michael Geary ("Claimant") and by Defendant Carolyn W.

Colvin, Acting Commissioner of Social Security ("Commissioner").   T-he motions were

referred to the undersigned pursuant to 28 U.S.C. § 636 and Magistrate Rule 1(c) and (d),

Local Rules of the United States District Court for the Southern District of Florida (DE 5).

The cross-motions present the general issue of whether there exists substantial

evidence to support the determination by the Administrative Law Judge ("ALJ") that

---

[1] Although other circuits have found the summary judgment device inappropriate for deciding cases under the Social Security Act, see, e.g., Igonia v. Califano, 568 F.2d 1383 (D.C. Cir. 1977), this Circuit has deemed it appropriate where the district court has reviewed the record and based its judgment on a finding of substantial evidence in the administrative record. See, e.g., O'Neal v. Comm'r of Soc. Sec., 2015 WL 3605682, No. 14-14011, at *1 (11th Cir. June 10, 2015); Miller v. Comm'r of Soc. Sec. Admin., 280 F. App'x 870, 871 (11th Cir. 2008).

Claimant retains the residual functional capacity ("RFC") to perform other work that exists in significant numbers in the national economy and is therefore "not disabled" under the Social Security Act. As framed by Claimant's Motion, the more specific issue is whether the ALJ erred in according greater weight to the opinion of Dr. Bell, an examining psychologist, than to the opinion of Dr. Golden, an examining neuropsychologist. The undersigned concludes that the ALJ did not err in according Dr. Bell's opinion greater weight than Dr. Golden's opinion and that substantial evidence supports the ALJ's determination that Claimant is able to perform work that exists in significant numbers in the national economy. Accordingly, the undersigned RECOMMENDS that Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law (DE 16) be DENIED, that Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary Judgment (DE 17, DE 18) be GRANTED, and that Commissioner's decision be AFFIRMED.

## II.    PROCEDURAL HISTORY

On June 29, 2011, Claimant filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging a September 28, 2008 onset of disability. Tr. 236, 245, 265. His applications were denied initially and upon reconsideration. Tr. 142-54, 156-67. On November 26, 2013, ALJ Elizabeth C. Palacios conducted a hearing at which Claimant appeared with counsel and testified. Tr. 35-100. On January 27, 2014, the ALJ issued her decision, finding that Claimant can perform jobs that exist in the national economy and that he is therefore not disabled. Tr. 12-29. Thereafter, on August 7, 2014, the Appeals Council denied Claimant's request for review, leaving the ALJ's decision standing as the final decision of the Commissioner. Tr. 1-4.

On August 26, 2014, Claimant filed a Complaint in this Court seeking judicial review

of the Commissioner's decision (DE 1). On November 6, 2014, the Commissioner filed

Defendant's Answer to Complaint (DE 12), denying Claimant's material allegations; the

Commissioner also filed the administrative record (DE 13). On January 5, 2015, Claimant

filed Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law

("Claimant's Motion") (DE 16), and on February 4, 2015, the Commissioner filed

Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and

Opposition to Plaintiff's Motion for Summary Judgment ("Commissioner's Motion") (DE 17,

DE 18). Finally, on February 17, 2015, Claimant filed Plaintiff's Response to Defendant's

Motion for Summary Judgment ("Claimant's Response") (DE 19).

The matter is now ripe for review.

III.    FACTS

The undersigned has reviewed the Statement of Facts contained within the

Commissioner's Motion and finds that it fairly and accurately summarizes the relevant

portions of the administrative record.[2]

### A.    Plaintiff's Background and Reported Impairments:

Plaintiff, who had the equivalent of a high school education,
was 30 years on the date that he alleged he became disabled
and 36 years old when the ALJ rendered her decision (Tr. 29,
236, 270). Plaintiff previously worked as a bartender at a night
club, but stopped working on August 1, 2007 when the club
shut down (Tr. 269-70, 276, 302). Plaintiff alleged he could no
longer work beginning on September 28, 2008, following a

---

[2]    The undersigned has bracketed minor corrections to the Commissioner's
Statement of Facts.

3

brain injury incurred from accident on an all-terrain vehicle (ATV) (Tr. 269, 273). Plaintiff alleged the accident caused problems with short-term memory, thought processing, vision, and sound sensitivity (Tr. 326).

**B.    Medical Evidence:**

On September 28, 2008, Plaintiff experienced a traumatic brain injury following an ATV crash (Tr. 360, 394-97). Following admission at Memorial Regional Hospital, urine toxicology reports were presumed positive for cannabinoids, opiates, and benzodiazepines (Tr. 394).    Memorial Regional Hospital discharged Plaintiff on October 8, 2008, and transferred Plaintiff to the Rehabilitation Unit to undergo further rehabilitation regarding his neurological symptoms (Tr. 360). On discharge from the Rehabilitation Unit on November 5, 2008, Dr. Ivor Nugent opined that Plaintiff required only "minimal" assistance with his memory (Tr. 484).

The administrative record contains no psychological treatment records from 2009 through May 2010.

Plaintiff was incarcerated in June 2010 due to an offense he committed prior to the alleged onset of his disability (Tr. 83).On June 16, 2010, an initial mental health evaluation showed Plaintiff had good concentration and good immediate, recent, and remote memory (Tr. 565).  Psychiatrist Perez Beauvil and nurse practitioner Florence Keane at Amor Correctional Health Services, Inc. observed Plaintiff had intact recent and remote memory during monthly mental status examinations on July 16, August 16, September 16, October 18, November 22, and December 20, 2010 (Tr. 570, 572-73, 575).

Following release from prison, Plaintiff obtained psychiatric services through Henderson Mental Health Center as part of a drug court treatment program for polysubstance dependence from January 5, 2011 through August 2011 (Tr. 634-40). Psychiatrists Hernan Pabon and Karl Backman did not identify any problems with Plaintiff's memory or concentration (Tr. 634-

4

40).  Instead, Dr. Backman described Plaintiff's concentration and recent and remote memory as adequate (Tr. 637). Plaintiff's date last insured for DIB expired on June 30, 2011 (Tr. 310).  The record contains no other mental health treatment records after August 2011 (Tr. 48-50).

On August 25, 2011, state agency psychological consultant, Dr. Heather Hernandez reviewed the record and determined Plaintiff had mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace (Tr. 106).  On December 6, 2011, state agency psychological consultant, B. Lee Hudson, made the same findings on reconsideration (Tr. 135-36).

On May 20, 2013, licensed psychologist, Dr. Edwina Hamilton Bell, performed a psychological examination of Plaintiff (Tr. 689-95).  Dr. Bell administered the Mini-Mental Status Examination (MMSE), which revealed "moderate" cognitive impairment based on Plaintiff's overall score (Tr. 692).  Testing revealed Plaintiff's immediate memory was intact but that Plaintiff had short-term memory deficits along with difficulties in concentration, attention, and computation (Tr. 692).  Dr. Bell noted Plaintiff was able to read and obey simple commands and to follow a three-stage command, which Dr. Bell concluded indicated Plaintiff had no apparent difficulties in following simple or complex instructions (Tr. 692).

Dr. Bell also administered intellectual testing and observed that Plaintiff followed all instructions, was persistent throughout testing, and displayed adequate attention and concentration (Tr. 692).  Plaintiff received Full Scale IQ, Verbal Comprehension, Perceptual Reasoning, Working Memory, and Processing Speed, and General Ability scores of 81, 83, 96, 80, 76, and 88, respectively (Tr. 693).  Plaintiff's Full Scale IQ, Verbal Comprehension, and Working Memory scores were in the Low Average range of functioning (Tr. 693).  Plaintiff's Processing Speed score fell within the Borderline range of functioning, and his Perceptual Reasoning score was within

5

the Average range of functioning (Tr. 693). Dr. Bell explained the Working Memory score measured Plaintiff's capacity to use short-term memory and the Processing Speed score measured Plaintiff's ability to differentiate and categorize visual information quickly and efficiently (Tr. 694). Dr. Bell explained that adequate processing speed may assist with how quickly one is able to learn new non-verbal or visual material (Tr. 694). Dr. Bell stated, "[a] complete neuropsychological evaluation is also warranted in order to identify other brain-related deficits and to inform treatment" (Tr. 694).

In June 2013, Dr. Bell completed a Medical Source Statement explaining Plaintiff's brain injury had negatively affected his working memory and processing speed (Tr. 696). She opined Plaintiff had "mild" limitations in his ability to understand, remember, and carry out simple instructions and make judgments on simple work-related decisions (Tr. 696) but that Plaintiff had "moderate" limitations in his ability to understand, remember, and carry out complex instructions and make judgment on complex work-related decisions (Tr. 696). The form defined "mild" as a "slight limitation" where the "individual can generally function well" and defined "moderate" as "more than a light limitation" where the "individual is still able to function satisfactorily" (Tr. 696).

On November 7, 2013, licensed psychologist, Dr. Charles Golden, completed his neuropsychological report regarding Plaintiff (Tr. 699-718). In the report, Dr. Golden noted Plaintiff's attention and concentration [were] impaired after Plaintiff was unable to recall more than three numbers forward and two numbers backward (Tr. 702). Dr. Golden noted Plaintiff could comprehend the evaluation instructions and tasks adequately but had trouble following multi-step instructions (Tr. 702). Dr. Golden administered IQ testing and found Plaintiff was in the Below Average range (Tr. 703). Plaintiff received Full Scale IQ, Verbal Comprehension, Perceptual Reasoning, Working Memory, and Processing speed scores of 76, 91, 98, 83, and 68, respectively (Tr. 703-

6

04). Dr. Golden noted Plaintiff's ability to process simple or routine information without making errors was in the Impaired range (Tr. 703). Dr. Golden administered the Woodstock Johnston Test of Cognition, which revealed Plaintiff's cognitive functioning was in the Below Average range but that Plaintiff's Working Memory and Cognitive Efficiency was in the Average Range (Tr. 704). Under the Wechsler Memory Scale, which measures overall memory functioning, Plaintiff was in the Impaired range (Tr. 704-05). Under the Stroop Color-Word test, which measures concentration and ability to switch between different kinds of cognitive tasks, Plaintiff performed in the Average range (Tr. 708).

Dr. Golden opined Plaintiff was unable to work due to difficulties with interpersonal skills, poor information processing, and avoidant behavior (Tr. 715). Dr. Golden stated any vocational task that would require Plaintiff to complete complicated tasks would be impossible for Plaintiff to complete (Tr. 716). Although Plaintiff could learn and follow simple rules, Dr. Golden opined Plaintiff would be unable to complete even "entry-level jobs" because, according to Dr. Golden, such jobs require one to move quickly and Plaintiff would either perform at an unacceptably slow pace or make mistakes (Tr. 716).

## C. ALJ's Decision and Vocational Expert Testimony:

In evaluating Plaintiff's applications for DIB and SSI, the ALJ applied the five-step, sequential evaluation process used for determining whether a claimant is disabled. The ALJ found Plaintiff's insured status for DIB expired on June 30, 2011 (Tr. 17, Finding No. 1), and that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on September 28, 2008 (Tr. 17, Finding No. 2). At step two, the ALJ found Plaintiff had the following severe impairments: traumatic brain injury, diplopia (double vision), and affective mood disorder (Tr. 18, Finding No. 3). The ALJ found Plaintiff's history of substance abuse and addiction disorder

7

was non-severe (Tr. 18, Finding No. 4). At step three, the ALJ found Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a listed impairment (Tr. 18, Finding No. 5).

Next, the ALJ found Plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels (Tr. 20, Finding No. 6). Regarding his vision problems, the ALJ found Plaintiff could perform no work requiring depth perception or peripheral vision (Tr. 20). Regarding his mental limitations, the ALJ found Plaintiff was limited to simple, routine, repetitive tasks, or unskilled work, with only occasional changes in work setting, and must have only occasional interaction with coworkers and supervisors but no interaction with the general public (Tr. 20, Finding No. 6). In making this finding regarding Plaintiff's mental limitations, the ALJ noted treatment notes following Plaintiff's ATV accident showed Plaintiff could obey simple commands with minimal assistance with memory (Tr. 21). Moreover, Plaintiff's treatment history showed significant gaps in treatment and only conservative/non-aggressive treatment since the accident (Tr. 26). Also, the ALJ found Plaintiff's activities of daily living, such as taking care of his dog and preparing simple meals, suggested Plaintiff was capable of performing a variety of daily activities consistent with the ALJ's RFC finding (Tr. 26).

In assessing Plaintiff's RFC, the ALJ accorded "great weight" to the opinion of Dr. Edwina Hamilton Bell because the opinion was consistent with the medical evidence, including treatment progress notes of record (Tr. 24). The ALJ accorded "some weight" to the opinion of Dr. Golden (Tr. 24). The ALJ also accorded greater weight to Dr. Bell's psychological examination narrative than to the result of Dr. Golden's neuropsychological testing (Tr. 25). The ALJ explained Dr. Golden provided vocational opinions outside his area of expertise and relied on Plaintiff's subjective reports that were not substantiated by the record, including Plaintiff's lack of psychiatric treatment since 2011 (Tr. 25). The ALJ discussed

8

the various testing performed by both Drs. Bell and Golden, and found such testing to support the RFC finding (Tr. 25).

At the November 26, 2013 hearing, the vocational expert (VE) testified a person with Plaintiff's RFC could not perform Plaintiff's past relevant work as a bartender, which was semi-skilled (Tr. 85). The VE testified that a person of Plaintiff's age, education, and work experience with Plaintiff's RFC could perform other unskilled jobs such as a linen room attendant (medium exertion), industrial cleaner (medium exertion), and housekeeper (light exertion), and yard worker (heavy exertion) (Tr. 86).

Based on the RFC finding and VE testimony, the ALJ found Plaintiff could not return to his past relevant work as a bartender (Tr. 27, Finding No. 7). However, relying on VE testimony, the ALJ found Plaintiff could perform other unskilled jobs existing in significant numbers in the national economy such as linen room attendant, industrial cleaner, housekeeper, and yard worker (Tr. 28). Accordingly, the ALJ found Plaintiff was not disabled as defined in the Social Security Act (Tr. 28, Finding No. 12).

Commissioner's Motion at 2-8 (DE 17, DE 18).

## IV.    STANDARD OF REVIEW[3]

In reviewing claims brought under the Social Security Act, the court's role is a limited

one. The Commissioner's findings of fact must be affirmed if they are based upon

"substantial evidence." 42 U.S.C. 405(g); Richardson v. Perales, 402 U.S. 389, 401

---

[3] The SSI disability regulations appear in Subsection I of 20 C.F.R. Part 416, 20 C.F.R. § 416.901 et seq., and are generally identical to those set forth in 20 C.F.R. Part 404, Subsection P, 20 C.F.R. § 404.1501 et seq., governing Social Security disability determinations. The standard of review in SSI cases is the same as the standard for Social Security disability cases. 42 U.S.C. § 1383(c)(3). Consequently, the case law addressing Social Security disability determinations is generally applicable to SSI cases.

(1971); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Moore, 405 F.3d at 1211; accord Perales, 402 U.S. at 401. The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, the court must determine whether the ALJ properly applied the correct legal standards. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

V.   ANALYSIS

    A.   The Sequential Evaluation

A "disability" is defined as an inability

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can
> be expected to last for a continuous period of not less than 12
> months.

42 U.S.C. § 1382c(a)(3)(A). In determining the merits of a claim for benefits, courts must consider the evidence as a whole, including: 1) objective medical facts or clinical findings; 2) diagnoses of examining physicians; 3) subjective evidence of pain and disability as testified to by the claimant and corroborated by other witnesses; and 4) the claimant's age, education, and work history. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. §§ 404.1520, 416.920. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful employment. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, a finding of "no disability" is

10

made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment is not found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next phase of the analysis. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the "residual functional capacity" ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Regulations define RFC as what "you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This determination takes into account "all the relevant evidence," including the medical evidence, the claimant's own testimony, and the observations of others. 20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3). The ALJ must then compare the RFC to the demands of the previous employment to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant establishes an inability to return to past relevant work, the burden shifts to the Commissioner to demonstrate that other substantial gainful employment exists

11

in the national economy that the claimant can perform. Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); Smith v. Schweiker, 646 F.2d 1075, 1077 (5th Cir. Unit A 1981). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. Smith, 646 F.2d at 1077. These shifting burdens make up the fifth and final step, at which point the ALJ must resolve whether the claimant is actually capable of performing other gainful and substantial work within the economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. See 20 C.F.R. § 404, subpt. P, app. 2. The Guidelines may be applied where a claimant is not performing substantial gainful activity and is prevented by a severe, medically determinable impairment from doing past relevant work. 20 C.F.R. §§ 404.1569, 416.969. The Guidelines are composed of detailed grids and rules, which, based on a claimant's RFC, age, education, and previous work experience, direct a finding of disabled or not disabled. See Walker, 826 F.2d at 1002.

Yet, the Guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of the rule." 20 C.F.R. §§ 404.1569, 416.969. The Guidelines, therefore, are generally not applicable where the claimant is unable to "perform the full range of work required of that category on a daily basis." Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991); Walker, 826 F.2d at 1002-03. Further, they may not be used when the claimant suffers from (significant) non-exertional limitations, such as (significant) mental impairments. Hargis, 945 F.2d at 1490; Walker,

826 F.2d at 1003. When the Guidelines may not be conclusively applied, they may serve only as a framework to determine whether sufficient jobs exist within the claimant's range of RFC. Hargis, 945 F.2d at 1490. In such instances, the Commissioner must instead carry her burden through the use of a vocational expert ("VE"). Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Walker, 826 F.2d at 1003. A VE provides the ALJ with a realistic appraisal of the work a claimant is capable of performing. Walker, 889 F.2d at 50.

B.    Application of the Sequential Evaluation by the ALJ

After considering all the evidence, the ALJ found that Claimant retains the RFC to perform jobs that exist in significant numbers in the national economy and that he is therefore "not disabled" within the meaning of the Social Security Act. Tr. 28. In arriving at this conclusion, the ALJ addressed each step in the evaluative sequence.[4]

The ALJ first observed that Claimant has not engaged in substantial gainful activity since September 28, 2008, the alleged disability onset date. Tr. 17.

The ALJ next found that Claimant does suffer "severe" impairments:  "traumatic brain injury, diplopia (double vision), and affective mood disorder." Tr. 18.   The ALJ explained that these impairments are "severe" because "they result in more than minimal limitations in the claimant's ability to perform basic work activities." Tr. 18.  Yet, the ALJ also found that Claimant's "history of substance addiction disorder" is a "non-severe mental impairment," explaining that he participated in a drug court treatment program in 2011 and

_____

[4] Preliminarily, the ALJ noted that Claimant had acquired sufficient quarters of coverage to remain insured through June 30, 2011. Tr. 16, 17. Accordingly, "[C]laimant must establish disability on or before [June 30, 2011] in order to be entitled to [DIB]."  Tr. 16. By contrast, a claimant need not be insured to receive SSI, and the onset date for SSI is the application date; benefits are limited to that date. Here, Claimant had filed his SSI application on June 29, 2011.

13

that he testified to not having used alcohol and/or drugs since 2011; additionally, his medical records do not show any current substance abuse. Tr. 18.

The ALJ then found that Claimant "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1." Tr. 18 (citations omitted). After considering whether the "paragraph B" criteria are satisfied, the ALJ observed that the severity of Claimant's mental impairment does not meet or medically equal the criteria for listings 12.02 or 12.04. Tr. 18. In arriving at this determination, the ALJ specifically found that Claimant has mild restrictions in his activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation of extended duration. Tr. 19. According to the ALJ: "Because the claimant's mental impairment does not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied." Tr. 19.

The ALJ proceeded to assess Claimant's RFC. As part of this assessment, the ALJ considered all the evidence, including Claimant's subjective complaints. To the extent that those complaints concerned the intensity, persistence, and limiting effects of his symptoms, the ALJ found that they are "not entirely credible to the degree alleged." Tr. 21. Although the ALJ did acknowledge that Claimant "may have some discomfort," she opined that "his complaints are not credible to the degree that he would be precluded from all work-related activity." Tr. 26. After discounting Claimant's subjective complaints, the ALJ found that Claimant retains the following abilities:

> [Claimant] has the [RFC] to perform a full range of work at all

14

> exertional levels, but with the following nonexertional limitations: no work requiring depth perception or peripheral vision; avoid concentrated exposure to vibrations and hazards, such as machinery and heights; limited to the performance of simple, routine, repetitive tasks, or unskilled work; no work with the general public; only occasional interaction with co-workers and supervisors; and only occasional changes in a work setting.

Tr. 20. The ALJ explained that in making this finding he had carefully considered "the entire record" and had also considered "opinion evidence in accordance with the requirements of 20 CFR [Sections] 404.1527 and 416.927"[5] and the pertinent Social Security Rulings. Tr. 20.

The ALJ next considered whether Claimant's RFC would permit him to return to his past relevant work. Tr. 27. Relying on the VE's testimony, as well as the Dictionary of Occupational Titles (DOT Code 312.474-010), the ALJ determined that Claimant's past relevant work as a bartender is semi-skilled work that is performed at a light exertional level. Tr. 27. After comparing Claimant's past work with his current RFC (including nonexertional limitations), the ALJ found that Claimant is no longer able to perform his past relevant work. Tr. 27.

The ALJ then considered whether there exist other jobs in significant numbers that Claimant can perform. Tr. 27. The ALJ acknowledged that Claimant's "ability to perform work at all exertional levels has been compromised by nonexertional limitations." Tr. 28. To determine the extent to which Claimant's nonexertional limitations eroded the

---

[5] The Regulations at 20 C.F.R. §§ 404.1527 and 416.927 speak to the importance of state agency physicians and stipulate that they are "highly qualified physicians . . . who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i) and 416.927(e)(2)(i). The Regulations require that an ALJ consider the findings of state agency physicians as opinion evidence. Id.

occupational base for unskilled work at all exertional levels, the ALJ asked the VE whether there exist jobs in the economy for an individual with Claimant's age, education, work experience, and RFC.  In response, the VE testified that such an individual would be able to perform the requirements of the following representative occupations:  linen room attendant (unskilled/SVP 2); industrial cleaner (unskilled/SVP 2); housekeeper (unskilled/SVP 2); and yard worker (unskilled/SVP 1).  Tr. 28.  The ALJ found that the VE's testimony was consistent with the information found in the Dictionary of Occupational Titles and, utilizing Medical-Vocational Guideline 204.00 as a framework,  further found that work exists in significant numbers that Claimant is able to perform.  Tr. 28.  Accordingly, the ALJ found that Claimant is "not disabled," and she concluded that he is not entitled to an award of either DIB or SSI benefits.  Tr. 28-29.

C.    Discussion

Claimant asserts only one ground for reversing or remanding the ALJ's decision: "The only significant medical condition to be addressed in this appeal is the severe cognitive deficit caused by a traumatic brain injury and the dysfunction resulting from the time it takes [Claimant] to process information."  Claimant's Motion at 17 (DE 16). According to Claimant, the ALJ erred "by according greater weight to the psychological consultative examiner's narrative and mental assessment than to the results of the neuropsychological testing."  Id.  (record citations omitted).  More specifically, Claimant faults the ALJ for assigning, "great weight" to the opinion of Dr. Bell, one examining psychologist, but only "some weight" to the opinion of another examining psychologist, Dr. Golden.  Id.

Dr. Golden had administered several psychological tests on nine days between June

16

4, 2013 and August 30, 2013, and he had completed a full neuropsychological report. Tr. 699. He concluded that the Claimant was incapable of holding even an "entry-level job" because his slow processing speed and inability to quickly comprehend instructions would lead to conflicts in any workplace. Tr. 716-17.

Dr. Bell administered psychological tests on May 20, 2013, many similar to those administered by Dr. Golden, and she completed a psychological assessment of Claimant. Tr. 689-94. Dr. Bell administered the MMSE test and an IQ test, and she diagnosed Claimant with cognitive disorders based on psychological parameters in the DSM-IV; she also completed a medical source statement. Tr. 692-94. Dr. Bell found that Claimant has "moderate" difficulties understanding complex instructions, but only "mild" difficulties understanding simple instructions. Tr. 696-97.

Dr. Bell, therefore, disagreed with Dr. Golden as to the extent of the limitation caused by Claimant's cognitive deficits. Tr. 24-25, 696. More specifically, Dr. Bell opined that Claimant has mild limitations in his ability to understand, remember, and carry out simple instructions and to make judgments on simple work-related decisions. Tr. 696-97. As to Claimant's ability to follow complex instructions, Dr. Bell opined that Claimant has a moderate cognitive impairment, which is consistent with the RFC determined by the ALJ. Tr. 20, 23-25, 696. By contrast, Dr. Golden opined that Claimant was unable to work or perform even "entry-level jobs" due to his deficits in memory, sustaining attention and concentration, cognitive processing speed, and persistence due to cognitive fatigue. Tr. 20, 23-25, 716.

In evaluating medical source opinions, which include psychological source opinions, an ALJ must consider the factors outlined in 20 C.F.R. §§ 404.1527(c) and 416.927(c),

including: examining relationship, treatment relationship (including length, frequency of examinations, and nature and extent of treatment), supportability, consistency, specialization, and other relevant factors. The Eleventh Circuit has made clear that "choosing between conflicting evidence is a task particularly suited to the fact finder, and [the court] will not disturb such a determination on appeal." Landry v. Heckler, 782 F.2d 1551, 1554 (11th Cir. 1986) (emphasis added). Furthermore, opinions on some issues, such as whether a claimant is disabled or unable to work, are not medical opinions; rather, they concern issues that are reserved to the Commissioner as administrative findings. See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

Here, the ALJ had substantial grounds for electing to accord more weight to the opinion of Dr. Bell than that of Dr. Golden. First, Claimant's treatment notes better supported Dr. Bell's opinion. The ALJ noted that Claimant received only conservative/non-aggressive treatment. Tr. 26. And the treatment notes of record, albeit sparse, reasonably supported mild cognitive limitations. Tr. 18-19. Although hospital records confirm that Claimant did suffer a traumatic brain injury in September 2008, the ALJ noted that Dr. Nugent (Claimant's attending physician at the Rehabilitation Unit at Memorial Regional Hospital) opined that Claimant required only "minimal" assistance with his memory upon discharge from the Rehabilitation Unit. Tr. 21, 360, 394-97, 484. Indeed, following his November 2008 discharge, Claimant did not obtain any mental health treatment until he was incarcerated in June 2010, almost two years later. Tr. 20-26. Yet, even on that occasion, treatment records from Dr. Beauvil (a psychiatrist at Amor Correctional Health Services) showed that Claimant had good concentration and good immediate, recent, and remote memory. Tr. 565, 570, 572-73, 575. Following his release from prison, Claimant

18

was treated by Drs. Pabon and Backman, who similarly observed that Claimant's concentration and recent and remote memory were adequate. Tr. 634-40. Significantly, Claimant did not obtain any mental health treatment after August 2011 (and prior to the ALJ's January 2014 decision). Tr. 24, 48. The ALJ, therefore, reasonably concluded that the treatment records indicated only moderate limitations in concentration, persistence, and pace, which is in conformity with Dr. Bell's opinion. Tr. 19, 24, 688-98.

Second, the ALJ believed that Claimant's activities of daily living were consistent with Dr. Bell's opinion that Claimant could generally function well when remembering and carrying out simple instructions. Tr. 26, 57-60, 288-90. The ALJ noted that Claimant can prepare simple meals, perform some household chores, go grocery shopping, and care for his dog, all of which evidence an ability to engage in simple, routine, or competitive tasks. Tr. 26, 57-60, 288-90. Claimant also reads, watches television, rides his bike, and occasionally drives his car. Tr. 57-60, 63, 73. Claimant acknowledged that he is "good" at following spoken instructions and "ok" at following written instructions. Tr. 292. And Claimant testified that his cognitive therapists encouraged him to engage in repetitive tasks, a limitation that is consistent with both Dr. Bell's opinion and the ALJ's finding. Tr. 20, 81-82, 696-97.

Third, the ALJ accorded great weight to Dr. Bell's assessment because it showed a "careful analysis" of Claimant's impairments: "Dr. Bell's assessment shows careful analysis of the claimant's impairments and is strongly supported by objective medical findings and treatment progress notes in the record." Tr. 24. By way of example, although Dr. Bell stated that certain aspects of Claimant's performance on the MMSE did indicate difficulty with concentration and attention, she explained that Claimant was nonetheless

19

able to read, to obey simple commands, and to follow a three-stage command, indicating that he could follow simple instructions.[6]   Tr. 692.   Although Dr. Bell concluded that Claimant's memory and processing speed negatively affected his full scale IQ scores, she explained that Claimant followed all instructions, was persistent, and displayed adequate attention and concentration during IQ testing.   Tr. 692.   And although Claimant's processing speed score was in the borderline range, Dr. Bell explained that that test measures the speed with which one is able to learn new material.   Tr. 694.   She opined that Claimant had moderate limitations in responding to changes in a routine work setting. Tr. 693-94, 697.   Yet, even as to such new material, Claimant worked slow but without mistakes.   Tr. 693-94, 697.

By contrast, the ALJ believed that Dr. Golden's assessment relied, in part, on Claimant's unsupported allegations and contained conclusions outside Dr. Golden's area of expertise.   Tr. 25.   More specifically, the ALJ stated that she "accord[ed] lesser weight to [Dr. Golden's] opinion because much of the report relies on the claimant's subjective complaints, which are taken as true," and "he relie[d] throughout the report upon the Claimant's subjective allegations that are not substantiated by the record as a whole."   Tr. 24, 25.   For example, Dr. Golden (in 2013) accepted Claimant's allegations of worsening mood and anxiety disorder since his 2008 injury; yet the ALJ expressly noted that Claimant had not even obtained any mental health treatment since 2011.[7]   Tr. 26, 709, 713.   Dr.

---

[6] Dr. Golden also had noted that although Claimant had trouble following multi-step instructions, he could adequately comprehend the evaluation instructions and the tasks. Tr. 702.

[7] By way of further example, Claimant told Dr. Golden that he could not work due to his peripheral vision impairments.   Tr. 714, 716.   Dr. Golden took these complaints as

Golden also asserted that Claimant would be unable to complete even "entry-level jobs" because he would either perform at an unacceptably slow pace or make mistakes; but as the ALJ properly noted,"Dr. Charles J. Golden, the psychologist at [Transcript page 699], provides vocational opinions, including an opinion of disability, which is outside the area of expertise of the psychologist in regard to Social Security Administration's definition of disability." Tr. 25. Ironically, Dr. Golden believed that Claimant could not perform simple tasks due to problems with his memory and concentration, even though Claimant's own treating physicians had noted few problems with either. Tr. 570, 572-73, 575, 716.

In sum, the ALJ properly discharged her legal duty to evaluate the respective merit of the psychologists' conflicting opinions, and substantial record evidence supports her decision to accord greater weight to the opinion of Dr. Bell than that of Dr. Golden. Dr. Bell's opinion, in turn, supports the ALJ's RFC finding that Claimant can perform simple, routine, and repetitive tasks with only occasional changes in the work setting. Tr. 20.

Claimant, however, suggests that this Court should not accept the ALJ's assessment because Dr. Golden, unlike Dr. Bell, is a specialist in neuropsychology. Claimant's Motion at 17-18 (DE 16). Although Claimant is correct that an ALJ will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist," 20

---

true when he reported that "[Claimant] has visual-spatial deficits above and beyond his CN III palsy and [double vision], which further impairs his ability to learn visual and spatial information necessary to perform manual labor tasks." Tr. 716. The ALJ, however, noted in her opinion that "treatment records from Nova Southeastern University Eye Care Institute dated August 16, 2011 confirmed that the claimant's eye impairment was not as limiting as alleged by the claimant. . . . In other words, the claimant's double vision occurs only with peripheral views. . . and claimant's prognosis for recovery is good." Tr. 22.

C.F.R. § 404.1527(d)(5), the Regulations make clear that "[s]pecialization" is only one of many factors to be considered by the ALJ. See 20 C.F.R. § 404.1527(d) (stating that the Social Security Administration will "consider all of the following factors in deciding the weight [it] give[s] to any medical opinion"). Among the other factors to be considered are "supportability" ("The better an explanation a source provides for an opinion, the more weight we will give that opinion"), "consistency" ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"), and "other factors" (including a medical source's understanding of the "disability programs and their evidentiary requirements"). 20 C.F.R. § 404.1527(d)(3),(4),(6). From the ALJ's decision, it is clear that she determined that Dr. Bell's opinion was more supportable and more consistent with the record as a whole, and she further observed that Dr. Golden had rendered opinions on matters that the Social Security Administration's regulatory scheme reserves to the ALJ. See 20 C.F.R. § 404.1527(e) (discussing medical source opinions on issues that are reserved to the Commissioner).

Claimant also suggests that Dr. Bell had acknowledged her own lack of expertise. Claimant's Motion at 19 (DE 16). To be clear, Dr. Bell and Dr. Golden are both licensed psychologists who, in this matter, acted as non-treating sources. Tr. 23-25. Neither, therefore, is entitled to the substantial deference generally accorded treating physicians. See 20 C.F.R. § 404.1527(d)(2). More importantly, contrary to Claimant's assertion, Dr. Bell did not "tacitly acknowledge her lack of expertise." Claimant's Motion at 19 (DE 16). Rather, Dr. Bell stated simply that a complete neuropsychological evaluation was warranted "to identify other brain-related deficits and to inform treatment." Tr. 694.

In sum, the Regulations provide that where the record contains inconsistencies, it

is the duty of the ALJ to "weigh all of the evidence" in deciding whether a claimant is disabled. 20 C.F.R. §§ 404.1527(c)(2). Weighing all the evidence is precisely what the ALJ did here. In explaining her RFC finding that Claimant is limited "to the performance of simple, routine, repetitive tasks, or unskilled work," to "no work with the general public," to "only occasional interaction with co-workers and supervisors," and to "only occasional changes in a work setting;" the ALJ engaged in an exhaustive review of the record. Tr. 20-27. The ALJ's review spanned seven (7) single-spaced pages of her decision and incorporated not only the opinions of Drs. Bell and Golden, but Claimant's entire medical record and activities of daily living. Tr. 20-27. The ALJ's review made clear that substantial record evidence supports her RFC finding, which formed the basis for her conclusion that Claimant is not disabled.[8]

## VI.    RECOMMENDATION

The ALJ accorded Claimant a full and fair administrative consideration in accordance with the applicable statutes and regulations. The ALJ thereafter issued a

---

[8] The undersigned notes that Claimant attached to his brief a third examination report by a Dr. Levine and a favorable determination by the agency. Claimant suggests that the subsequent report and award of benefits show that the ALJ erred in discounting Dr. Golden's report. The undersigned disagrees. Were Claimant's suggestion sound, then every award of benefits on a subsequent application would lay the predicate for challenging an earlier denial of benefits. In this instance, the evidence proffered by Claimant relates to a period after the ALJ's January 2014 decision. More specifically, the examination and subsequent favorable determination both occurred in November 2014 and, therefore, are not material to the ALJ's conclusion that Claimant was not disabled through January 27, 2014. See Winston ex rel. D.F. v. Astrue, 341 F. App'x 995, 998 (5th Cir. 2009) ("Whether a subsequent application is approved is of no moment to the question of whether the prior application was meritorious at the time of consideration.") (emphasis in original); Wilson v. Apfel, 179 F.3d 1276, 1278-79 (11th Cir. 1999) (finding subsequent determination by SSA indicating claimant met a listing, which entitled her to benefits, was irrelevant where the determination related to the period after the ALJ's decision at issue).

23

thorough decision, supported by substantial evidence, in which she found that Claimant possesses an RFC that would permit him to perform significant numbers of jobs in the national economy; she properly concluded, therefore, that Claimant is not entitled to DIB or SSI benefits.  Claimant has argued that the ALJ's RFC finding is flawed because it improperly discounted the opinion of Dr. Golden and, therefore, failed to adequately account for the dysfunction resulting from his cognitive deficit.  The ALJ, however, had throughly reviewed the entire medical record, considered Claimant's daily activities, and carefully assessed the relative merit of the psychologists' opinions.  She then articulated adequate grounds for assigning greater weight to the opinion of Dr. Bell than that of Dr. Golden; that decision should not be disturbed.  The undersigned, therefore, respectfully RECOMMENDS that Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law (DE 16) be DENIED, that Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary Judgment (DE 17, DE 18) be GRANTED, and that the Commissioner's decision be AFFIRMED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the district court of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted

or adopted by the district court except on grounds of plain error or manifest injustice. See 28 U.S.C. § 636(b)(1); Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc).

DONE and SUBMITTED at Fort Lauderdale, Florida this ___ day of July 2015

BARRY S. SELTZER
United States Magistrate Judge

Copies furnished to:

Honorable James I. Cohn
United States District Judge

Joy E. Greyer, Esquire
Rosenthal, Levy & Simon, P.A.
1401 Forum Way, Sixth Floor
West Palm Beach, Florida   33401
Attorney for Plaintiff Andrew Michael Geary

Karin D. Wherry, Esq.
Assistant United States Attorney
99 N.E. 4th Street, Suite 300
Miami, Florida   33132
Attorney for Defendant Carolyn W. Colvin,
Acting Commissioner of Social Security

25